## ACTION FOR PENALTY FOR HAULING CAR WITH DEFECTIVE COUPLER.

Circuit Court of Lorain County.

THE LAKE TERMINAL RAILROAD CO. v. STATE OF OHIO.

Decided, September 28, 1910.

*Railroad Safety Appliances—Defect Occurring in Transit—Repairs— Duty of Company.*

1. A judgment against a railroad company for a penalty for violation of the provisions of General Code, Section 8950, making it unlawful to haul a car not equipped with a coupler which can be uncoupled without the necessity of men going between the ends of the car, will be reversed, where the evidence shows that the coupler complained of became out of order after the train was made up and started and the defect being immediately discovered, the car was watched until it reached the first point where the coupler could be repaired and was there cut out and the coupler repaired.

2. A railroad company is not required to have on every train it operates, sufficient and proper tools and skilled workmen so that it can repair all defects which may suddenly occur in any of the appliances which by law it is required to have upon its cars and locomotives.

*E. G., H. C. & T. C. Johnson* and *Squire, Sanders & Dempsey,* for plaintiff in error.

*F. M. Stevens,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

Plaintiff in error was found guilty of violating Section 8950 of the General Code, which provides as follows:

"No such common carrier shall haul, or permit to be hauled or used on its line, a locomotive, car, tender, or similar vehicle used in moving state traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The bill of exceptions shows that the case was tried upon an agreed statement of facts, supplemented by very little other

evidence. Paragraph 8 of the agreed statement of facts reads as follows:

"That said defendant the Lake Terminal Railroad Company hauled said car No. 23,200 from the No. 1 scale house located just within the west fence of the yards of the National Tube Company at Lorain to the joint inspection yards known as Tenth avenue at Lorain, a distance of 3,200 feet, with the coupler link on the 'A' end of said car disconnected, under the circumstances set forth in the answer of the defendant."

The circumstances under which the railroad company hauled the car set forth in its answer, are as follows:

"Defendant says that on July 22d, 1909, at about 9:30 o'clock A. M., while car No. 23,200 was being weighed upon the so-called No. 1 scales, located just inside the west fence of the National Tube Company's yard at Lorain, Ohio, said car being at that time the middle car in a train of nineteen cars, one of the defendant's brakemen lifted the coupling lever at the west end of said car to uncouple the same, and the chain in the coupling head pulled out of the head.

"Defendant says that said car had been inspected a few hours before; that all its appliances were then found in proper condition; that no defect in any of the appliances on said car was discovered or existed until defendant's brakemen attempted to cut the train at the No. 1 scale as aforesaid.

"Defendant says that as soon as its brakeman discovered that the coupling lever chain was disconnected, he threw the operating or coupling lever back over the top of the end sill so as to prevent its use.

"Defendant says that after its brakeman had turned the coupling lever so as to prevent its use as aforesaid, he uncoupled said car by using the lever on the end of the adjoining car; that after the car was weighed it was coupled by impact and was not uncoupled again, but was taken direct to the interchange track used in common as such by the defendant and the Baltimore & Ohio Railroad Company where tools and material with which to repair such defects as the one described, were kept, and was the nearest point where such repairs could be made.

"Defendant says that its brakeman rode with said train and car to said interchange track, ready to give warning about said disconnected operating lever and prevent its use by other employes, that as soon as he met defendant's inspector, defendant's brakeman told him about the condition of said operating lever and said inspector had the same repaired as soon as permitted by Johnson, agent of plaintiff."

Johnson was the State Inspector of Safety Appliances, who was present at the time.

It would seem from these conceded facts in the case that the railroad company was diligent in its duty of inspection and that immediately upon discovery of the defect in the coupler the railroad company exercised the highest degree of care, not only in repairing the defect, but in protecting its employes from any possible danger, to them that might arise by reason thereof, until the repair was made.

The only criticism upon this conclusion made by the prosecuting attorney is his statement that the defect in the coupler was of such a nature that it could have been fixed with hammer and cold chisel at the scales, when discovered, if such tools had been at hand, and that company should have had them at hand for that purpose. This suggests that it is the duty of the company to carry repair tools on every train, but what is the extent of that duty? In this case it would have been fulfilled by having at hand a hammer and chisel; the next defect might require an anvil and forge. This is not all. It does not appear that any one of the train crew could have fixed this coupler with these tools or any number of tools. It is well known that a skilled mechanic can repair mechanical devices without any tools, which the untrained man can not repair with a full kit of tools. Is the railroad company required by this law to have not only tools, but a skilled repair man on every train? We think not.

The law here claimed to have been violated is a humane one and only by its strict enforcement will its benefits accrue to those who risk their lives in the transportation business of the country. Had any employe been injured by reason of this defect in the coupler, the better authorities seem to agree that the law imposes the hardship thus occurring without the fault of either party, upon the company rather than upon the individual. But cases thus arising can not rule the company's duty to the state as fixed by the statute here under consideration. The question of inevitable hardship to one of the two parties is not involved. The sole question here is whether the company did everything in its power to comply with the law, intelligently,

promptly and with that foresight which is required of the most skillful in the business.   We think it did, and arriving at this conclusion from the conceded facts in the case, it is our duty not only to reverse the judgment, but to enter judgment in favor of the plaintiff in error.

The contention of plaintiff in error that the petition fails to state a cause of action under the statute, we think is not well taken.

Judgment reversed and judgment for plaintiff in error.